IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

PERRY NEAL,

                      Plaintiff,                    OPINION AND ORDER

    v.

                                                                 20-cv-503-wmc

MARIO CANZIANI and
BRANDON DROST,

                      Defendants.

While incarcerated at Stanley Correctional Institution, *pro se* plaintiff Perry Neal claims that Stanley employees Brandon Drost and Mario Canziani excluded him from the veterans resource room because of his race in violation of the Fourteenth Amendment's Equal Protection Clause. Pending before the court are the parties' cross motions for summary judgment. (Dkt. ##36, 55.) Because the undisputed evidence of record establishes that Drost did not exclude Neal from the room because of his race, and that defendant Canziani had no reason to believe that Drost had excluded Neal from the room improperly, the court will deny Neal's motion, grant defendants' motion on the merits, and direct entry of final judgment in defendants' favor.

UNDISPUTED FACTS[1]

Plaintiff Perry Neal has been incarcerated at Stanley since at least 2019. At that

---

[1] Unless otherwise indicated, the following facts are material and undisputed. The court has drawn these facts from the parties' proposed findings of fact and responses, as well as the underlying, record evidence as appropriate. Plaintiff again objects to the court's order allowing defendants to respond to plaintiff's proposed findings of fact. (Dkt. #69.) However, that motion is denied because the court already considered defendants' untimeliness in allowing them to submit late

time, defendant Brandon Drost was a Unit Manager and defendant Mario Canziani was Stanley's Deputy Warden.

Stanley offers a housing unit for veteran inmates, so that those inmates may receive additional services and a more supportive living environment for those who may face unique challenges by virtue of their military experience. Because it is a privilege to be housed there, inmates in that wing are held to higher standards and expectations regarding their behavior, productivity and participation in services and programming.

Among other features, the veterans wing contains a "resource room," which is a community space containing biographies from military veterans, military themed fiction, documentaries, a television for playing movies, a small library of military-themed movies and VA-related paperwork. The resource room is a popular space for veterans, so non-veteran inmate custodians are asked to clean the resource room.

When Drost first started managing the veterans wing, he permitted these non-veteran inmates who cleaned the room to have access to the veterans room and its equipment. Relevant here, it is undisputed that Drost allowed plaintiff Neal and another, non-veteran inmate, who was white, to access the resource room after cleaning. Drost also granted access to two other white, non-veteran inmates who worked as clerks in the resource room.

In December 2019, however, Drost changed that policy, choosing to limit access to just veterans. The parties dispute why Drost made that change and whether he excluded

responses to plaintiff's proposed findings of fact.

all non-veterans from the resource room.  Drost attests that he made the change after receiving complaints from veterans about crowding in the resource room, which is small, and about the attitudes of some of the non-veterans using the room, including Neal.  Drost further attests that he changed the policy to be fair to the veterans and to restore the military-type spirit de corps that the veterans were supposed to have in the veterans wing and resource room.  Specifically, Drost attests that even though Neal is a very good custodian, he created climate issues with his attitude and behavior toward other inmates and staff.  More specifically, he attests veteran inmates reported to Drost that Neal had: demanded to pick the movie that played in the resource room; threatened veteran inmates; and spoke harshly to veteran inmates about their service, including that they were a "disgrace to [their] country."  (Drost Decl. (dkt. #58) ¶ 14.)  Neal disputes negatively impacting the climate of the resource room in any way, including making that latter statement, but it is undisputed that Drost received those complaints.

After Drost changed the policy, there was also some uncertainty about how the policy change was to be enforced.  On December 20, Neal had been invited to the resource room by a veteran inmate.  However, when he went to sign a movie out, a non-defendant correctional officer named Blink questioned Neal for being in the resource room.  Neal responded that he had permission to be in the room and asked Blink why he was not questioning the white non-veterans who were also in the room.  Blink responded that he was talking to Neal, and when Neal responded that he had nothing else to say, a sergeant further interjected that Neal was allowed to be in the resource room.  After Neal left the resource room some two hours later, Blink again confronted him, said he was going to email

Drost about Neal being in the veteran's resource room, and further observed that "you people" try to "get over on these sergeants."

Neal understood Blink's latter observation to be a reference to his race, in part because Blink previously made racist comments to him. After that exchange, therefore, Neal complained about Blink's harassment to his supervisor, a sergeant, as well as to Drost, adding that while he had been excluded from the resource room, a white custodial worker was not questioned. When Drost learned about Neal's complaint, he admonished Blink that he needed to enforce the rule for all non-veterans, not just Neal.

Nevertheless, Neal contends that Drost singled him out for exclusion. In support, Neal states that a veterans clerk, Anthony Balistreri, told him that Drost ordered him to change the policy but to allow two white non-veteran clerks, inmates Mike Reit and Jimmy Ramirez, to have access to the resource room. However, Neal has not submitted a sworn statement from Balistreri. Moreover, because Neal offers Balistreri's statement as proof that Drost said it, that statement is hearsay with no obvious exception. *See* Fed. R. Civ. P. 802.

Neal also submits evidence that at some point after December 23, Balistreri posted a notice listing every veteran allowed into the resource room, and the list included the two non-veteran inmate clerks, Ramirez and Reit. (Neal Aff. (dkt. #38) ¶ 11.) The notice Neal submits includes Drost's name, but not his signature (*see* dkt. #37-1), and that document is hearsay as well. In any event, Drost attests that he never authorized or knew about such a list before it was created, and when he learned about the list, he took it down, reminding staff that non-veterans were not permitted in the resource room. (Drost Decl.

4

(dkt. #58) ¶ 17.)  On January 2, 2020, Neal followed up with Drost again about access to the resource room and was told that only veterans were allowed in the resource room.

Drost further attests that since December of 2019, he has maintained that same policy.  Although Neal attests that at a non-veteran inmate has been seen socializing in the resource room, he does not submit evidence that *Drost* failed to maintain or enforce the policy.  Instead, he submits an affidavit from Ramirez, who attests that: (1) his fellow clerk Reit and he were still allowed to access the resource room; and (2) veterans did not want Neal in the resource room because of his race.  (Ramirez Aff. (dkt. #39) ¶¶ 3-6.)

In a letter dated January 5, 2020, Neal wrote a letter to Deputy Warden Canziani, stating that he was denied access to the resource room because of his race.  When Canziani received the letter, he had already met with Drost and was aware of the recent rule change permitting only veterans to access the resource room.  Canziani responded on January 9, advising Neal that the unit manager handles changes within their unit and encouraging Neal to work with Drost regarding issues with inmates in his unit.  Canziani also explained that the rules governing access to the resource room had changed and non-veteran inmates were no longer allowed access to that room.  Canziani concluded in his letter that because the veterans wing was new, operations and procedures were subject to change based on Drost's judgment.

Defendant Canziani also attests that he generally does not intervene with unit managers' operational decisions unless he feels the decision is wrong, against policy or requires further operational review.  Canziani believes that Drost made the right decision to limit resource room access to just veterans because of limited space and the lack of

5

respect for items in the room, and because the presence of non-veterans created animosity and disturbances in what was meant to be a quiet space for veterans to connect.

Neal submitted a second letter to Canziani dated January 13 in which he raised general complaints about the veterans wing, including racist behaviors and drawings of swastikas and profanities.  Canziani responded on January 16 that the drawings were under investigation, rated "R" movies had been removed from the wing, operations and procedures were subject to change, "a veteran is still a veteran regardless of his discharge status," and it had not been reported or found that the veteran secretary uses the "N" word on the unit.  Canziani closed the letter by stating that if Neal wanted to be moved from that unit, he should reach out to Drost.

OPINION

Summary judgment must be granted against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the moving party meets this burden, then the non-moving party must provide evidence "on which the jury could reasonably find for the nonmoving party" to survive summary judgment.  *Trade Fin. Partners, LLC v. AAR Corp.*, 573 F.3d 401, 406-07 (7th Cir. 2009), quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).  Here, since both parties have moved for summary judgment, the court applies the same burdens on the motion under consideration.

The Equal Protection Clause "is essentially a direction that all persons similarly

situated should be treated alike." *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985).  To avoid summary judgment on his claim, Neal "need[s] to come forward with evidence that would allow a reasonable jury to infer that the defendants intentionally treated him differently because of his race." *Lisle v. Wellborn*, 933 F.3d 705, 719 (7th Cir. 2019).  As the Seventh Circuit explained in *Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760 (7th Cir. 2016), the crucial inquiry is whether all the evidence "would permit a reasonable factfinder to conclude that plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the discharge or other adverse employment action." *Id.* at 765.

Defendants argue that they are entitled to summary judgment because Neal has not shown that he was treated differently than similarly situated, white inmates.  Neal contends that he is entitled to summary judgment because Drost directed that he be excluded from the resource room and Canziani affirmed Drost's improper directive.

However, no admissible evidence of record suggests that Drost treated Neal differently from similarly situated inmates, much less excluded Neal from the resource room because of his race.  As an initial matter, no evidence suggests that Drost made the policy change to single out Neal for mis-treatment.  Rather, the evidence is that for a certain period after the veterans wing was created, Drost permitted non-veteran inmates into the resource room.  Drost changed the policy to exclude all non-veterans to avoid overcrowding and conflicts, but the only evidence suggesting that Drost changed the policy because of Neal is that Drost had received complaints about his behavior in the resource room, including that he threatened other inmates, made disparaging comments about their military service, and demanded to choose the movie.  Neal disputes engaging in disruptive

behavior, but there is no dispute that Drost actually received those complaints. Moreover, Drost's decision to exclude non-veterans to avoid conflicts and crowding was reasonable on its face, and Neal's arguments that the policy change was pretext fail on this record.

Neal contends that the policy change did not effectively exclude all non-veterans because two non-veteran, white clerks, Reit and Ramirez, were not only allowed back in the resource room but also placed on a list of allowed inmates. Drost concedes there was a period of uncertainty as to whether any non-veteran inmates were still allowed access to the resource room, and that certain non-veterans were allowed back into the resource room, but it is undisputed that he did not approve of their access after he made the policy change. Drost also attests that he did not create the list of inmates allowed in the resource room that included Reit and Ramirez, and Neal's unsigned document is hearsay. In any event, even accepting that Drost had allowed the non-veterans clerks in the resource room, the two clerks are not similarly situated to Neal, who was working as a custodian. Neal has not shown that another white custodian, like him, was allowed in the resource room.

Neal's only evidence that Drost intended to exclude him specifically is inadmissible hearsay. As noted above, Neal submits the statements of veterans clerk Balistreri, who allegedly *told Neal* that Drost had instructed him to exclude Neal from the individuals allowed in the resource room. But, as the court noted above, Balistreri's statements about what Drost wanted the policy to be are inadmissible hearsay since offered for the truth of the matter asserted. Absent that statement, Neal has not submitted evidence that would permit a reasonable trier-of-fact to conclude that Drost excluded Neal from the resource room for any reason other than his non-veteran status or disruptive behavior.

Most importantly, there is no evidence that Drost made the policy change *because* of Neal's race.  Certainly, Neal experienced racist behavior, but from other inmates and allegedly from CO Blink, who he claims made racially-driven comments to Neal in the past. Neal also states that *Blink* singled him out to exclude him from the resource room, choosing to question just him when he was legitimately spending time in the resource room and other, white non-veterans were also present.  However, Drost cannot be held liable for Blink's behavior unless Drost condoned or directed it.  *Minix v. Canarecci*, 597 F.3d 824, 833 (7th Cir. 2010) (to be personally liable for another individual's actions, a supervisor must have "condoned or acquiesced in a subordinate's unconstitutional treatment of [plaintiff]").

Here, Neal has offered no evidence that Drost directed Blink to make inappropriate comments or question Neal's presence in the resource room.  Nor does he claim that Drost was present for or involved in the incident between Blink and Neal.  Rather, Drost handled Blink's improper behavior reasonably:  after Drost learned about Blink's interaction with Neal, Drost took corrective action by explaining to Blink that *no* non-veterans were allowed in the resource room .  Therefore, Blink's improper treatment of Neal cannot be attributed to Drost, and because no evidence would allow a reasonable trier-of-fact to conclude that Drost excluded Neal from the resource room because of his race, Drost is entitled to summary judgment on the claim against him.

Canziani's involvement was even more limited, and the evidence does not support a finding that he knew that Drost was treating Neal unfairly and either facilitated it, approved it, condoned it, or turned a blind eye to it.  *See Johnson v. Snyder*, 444 F.3d 579,

583-84 (7th Cir. 2006). In fact, Canziani wrote two letters to Neal responding to his complaints about how Drost was handling the unit, deferring to Drost's judgment about use of the resource room and directing Neal to ask for a transfer. No evidence suggests that Canziani had reason to believe that Drost, or any prison officials for that matter, treated Neal worse than other white inmates with respect to access to the resource room. And there is no dispute that Canziani believed that Drost made the right decision about changing the policy about who may access the resource room, and his understanding was that Neal had been disruptive in the resource room, which he believed justified the policy change.

Neal also complained to Canziani about highly problematic behavior of inmates in the veterans wing, but Neal is not proceeding against either defendant on claims arising from the behavior of other inmates. Because Canziani had no basis to infer that Drost was mistreating Neal because of his race, his failure to take corrective action cannot amount to a constitutional violation. Therefore, Canziani is also entitled to summary judgment on the claim against him, and the court need not reach defendants' alternative arguments related to damages.

Accordingly, the court will deny Neal's motion for summary judgment, grant defendants' motion and direct entry of judgment in defendants' favor.

ORDER

IT IS ORDERED that:

1. Plaintiff Perry Neal's motion for reconsideration (dkt. #69) is DENIED.

10

2.  Plaintiff's motion for summary judgment (dkt. #36) is DENIED.

3.  Defendants' motion for summary judgment (dkt. #55) is GRANTED.

4.  The clerk of court is directed to enter judgment in defendants' favor and close this case.

Entered this 29th day of June, 2023.

BY THE COURT:

/s/

_____

WILLIAM M. CONLEY
District Judge

11