IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

PERRY NEAL,

                Plaintiff,                OPINION AND ORDER

v.

                                              20-cv-503-wmc

BRANDON DROST,

                Defendant.

Plaintiff Perry Neal is currently a prisoner at Fox Lake Correctional Institution and representing himself. The court previously granted plaintiff Neal leave to proceed on a claim against a Stanley Correctional Institution ("Stanley") employee, Brandon Drost, for allegedly condoning his exclusion from a veteran's resource room at Stanley because of his race in violation of the Fourteenth Amendment's Equal Protection Clause.[1] Pending before the court is defendant's renewed motion for summary judgment and sanctions due to alleged misrepresentations plaintiff proffered in a fellow inmate's supplemental affidavit. (Dkt. #101.) Because that inmate reaffirmed certain statements supporting plaintiff's claim at his deposition, and there are disputes about whether plaintiff knowingly submitted false statements, however, the court must deny defendant's motion and set this case for trial.

UNDISPUTED FACTS[2]

**A. Background**

At the relevant times, plaintiff Neal was incarcerated at Stanley, where defendant Drost was a Unit Manager. Stanley offers a special housing unit to veteran inmates, where they may

---

[1] The court granted summary judgment to defendant Mario Canziani, and plaintiff has presented no reason to reconsider that decision. (Dkt. #80, at 9-11.)
[2] The undisputed facts are drawn from the court's previous summary judgment opinion and order

receive additional services, including a veteran's "resource room."  When Drost first started managing the veteran's wing, he allowed non-veteran inmates charged with cleaning the resource room access to the room and its equipment.  Relevant here, it is undisputed that among those allowed access to the room after cleaning by Drost were plaintiff Neal, who is black, and another, non-veteran inmate, who is white.  Drost also allegedly granted access to two other white, non-veteran inmates, both of whom worked as clerks in the resource room.

In December 2019, however, Special Housing Unit Manager Drost changed his policy, limiting access to veterans only.  After Drost changed the policy, there was also some uncertainty about how the policy change would be enforced.  Specifically, on December 20, Neal had been invited to the resource room by a veteran inmate, but when he went to sign a movie out, a different corrections officer named Blink questioned Neal about being in the resource room at all.  After responding that he had permission to be in the room, Neal asked Blink why he was not questioning the white non-veterans who were also in the room.  Officer Blink then answered that he was "talking to Neal."  At that point, while a sergeant further allegedly interjected that Neal *was* allowed to be in the resource room, Neal responded that he had nothing else to say and left the resource room.  Nevertheless, some two hours later, Blink allegedly again confronted Neal, observing that "you people" try to "get over on these sergeants," which Neal understood to be a reference to his race.

After that last exchange, Neal complained about Blink's harassment to his supervisor, a sergeant, as well as to Unit Manager Drost, adding that a white custodial worker was not questioned, while he had been excluded from the resource room.  When Drost learned about

---

(dkt. #80), defendant's reply in support of his supplemental proposed findings of fact, and the evidence submitted by the parties.

Neal's complaint, he claims to have admonished Blink to enforce the new exclusionary rule as to *all* non-veterans, not just Neal.

## B. Summary Judgment Reconsideration and Ramirez Supplemental Affidavit

The court initially granted defendants' motion for summary judgment, concluding in relevant part that "Drost did not exclude Neal from the room because of his race." (Dkt. #80, at 1.) In particular, while the court found a factual dispute existed as to whether Corrections Officer Blink had made racially-driven comments towards Neal, there was no evidence that Unit Manager Drost had directed Blink to make inappropriate comments or to question Neal's presence in the veteran's resource room. (*Id.* at 9.) Indeed, the court concluded that Drost had responded reasonably to Blink's improper behavior by directing that no non-veterans were allowed in the resource room. (*Id.*) Thus, the court concluded that Blink's improper treatment of Neal could not be attributed to Drost. (*Id.*)

Neal moved for reconsideration, arguing that a reasonable jury could find that he faced racism from other inmates and Corrections Officer Blink, relying in part on a late-filed, supplemental affidavit from inmate Jimmy Ramirez. (Dkt. #93.) Specifically, Ramirez averred in his supplemental affidavit that Drost had allowed him access to the veteran's resource room from September 2019 to September 2021, including after Neal had been removed from Unit 5 (the wing on which the veteran's room was located) for a conduct report. (Ramirez Supp. Aff. (dkt. #74) ¶¶ 3-4.) In March 2020, Ramirez asked Blink what happened to Neal, and Blink allegedly said that "[Neal's] cocky black ass got what he deserved," adding that the rule was "no niggers in the veteran[']s room." (*Id.* ¶ 5.) After Blink told Drost how white veterans felt about Neal coming into the resource room, Ramirez added that Drost changed the rule to

3

only allow veterans in the resource room. (*Id.*) Further, Ramirez claims he told Blink that he was not a veteran, but Blink said that he could continue to access the room because he was white. (*Id.* ¶ 6.) Finally, Ramirez avers that he told defendant Drost about Blink's statements, and Drost simply said that he would investigate the matter, specifically telling Ramirez not to discuss the issue with anyone. (*Id.* ¶ 7.) However, neither Drost nor anyone from the security office ever questioned him further about Blink's comments. (*Id.* ¶ 8.)

The court granted Neal's motion for reconsideration, finding that Ramirez's averments might support a reasonable jury to infer that defendant Drost condoned Blink's racist behavior or facilitated the racist climate in the resource room. (Dkt. #96, at 5.) The court then allowed Drost time to depose Ramirez and to file a renewed motion for summary judgment.

C. **Ramirez's Deposition**

At his deposition, Ramirez testified that: Neal had just brought the supplemental affidavit to him; he read it over; and he "just agreed with most of the stuff that [Neal] said there." (Ramirez Dep. (dkt. #105) 8.) In particular, Ramirez described paragraph five of his supplemental affidavit as "sort of accurate," but testified that Blink did *not* tell him "no N-words in the veteran[']s room." (*Id.* at 9.) Instead, Ramirez testified that he asked Neal about that statement, and Neal said that he had "heard [Blink] say that to somebody."[3] (*Id.*) Ramirez further testified that he did not know why he signed the affidavit despite disagreeing with some of the statements. (*Id.*) Next, Ramirez initially testified that Blink *had* told him that Drost changed the rule because "he knew how [Blink] and others felt about non-white veterans using it." (*Id.* at 10.) However, Ramirez later clarified that Blink actually said Drost changed the

---

[3] Neal asserts that this statement is inadmissible hearsay, but it is not hearsay because Drost offers it as a statement of a party opponent. Fed. R. Evid. 801(d)(2)(A).

4

rules to only allow veterans, but not that Drost changed the rules to prohibit access to anyone unless white. (*Id.*) Finally, Ramirez nevertheless reaffirmed that Blink said *he* would not be stopped from accessing the veteran's resource room, even though not a veteran, because he was light-skinned. (*Id.*) Ramirez testified that he told Drost about Blink's statement that he could continue to access the veteran's resource room because he was white, and Drost said that he would investigate, but no one ever followed up. (*Id.* at 10-11.) Ultimately, Ramirez decided not to continue visiting the veteran's room because he was not a veteran. (*Id.*)

For his part, Neal swears that he drafted Ramirez's supplemental affidavit based on his interview notes and that it is consistent with what Ramirez said. (Neal Aff. (dkt. #110) ¶ 9.) Neal also avers that Ramirez signed the affidavit under penalty of perjury and never disagreed with any statements in the affidavit. (*Id.* ¶¶ 9, 13-14.)

OPINION

Summary judgment must be granted against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party meets this burden, then the non-moving party must provide evidence "on which the jury could reasonably find for the nonmoving party" to survive summary judgment. *Trade Fin. Partners, LLC v. AAR Corp.*, 573 F.3d 401, 406-07 (7th Cir. 2009) (alteration adopted), quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

The Equal Protection Clause "is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). To avoid summary judgment on his claim, plaintiff "need[s] to come forward with evidence

that would allow a reasonable jury to infer that the defendants intentionally treated him differently because of his race." *Lisle v. Wellborn*, 933 F.3d 705, 719 (7th Cir. 2019). Relying on asserted misrepresentations in Ramirez's supplemental affidavit, defendant renews his motion for summary judgment. In the alternative, he asks the court to dismiss the case and assess a strike because plaintiff abused the judicial process by knowingly submitting false statements in Ramirez's affidavit. Because there remains a material dispute of fact about whether defendant condoned Blink's unconstitutional treatment of plaintiff, however, summary judgment is not warranted.

To be sure, Ramirez disavowed at his deposition his most incendiary comment: that Blink had told him the new rule was "no [n—] in the veteran[']s room" and clarified that he had voluntarily chosen not to continue using the veteran's room. (Ramirez Supp. Aff. (dkt. #74) ¶ 5.) Even so, Ramirez reaffirmed, despite his being a non-veteran, Blink told him that he could continue to access the veteran's room because he was white or could pass for white, *and* that defendant Drost had apparently taken no action even after Ramirez notified him of Blink's position. (*Compare id.* ¶¶ 6-8 *with* Ramirez Dep. (dkt. #105) 10-11.) Thus, at the very least, a reasonable jury *could* infer that defendant condoned Blink's having denied plaintiff access to the veteran's resource room because of his race. *Minix v. Canarecci*, 597 F.3d 824, 833-34 (7th Cir. 2010) (to be personally liable for another individual's actions, a supervisor must have "condoned or acquiesced in a subordinate's unconstitutional treatment of [plaintiff]"). While defendant disputes that Ramirez told him anything about his racism concerns, adding that he has no incident reports or complaints supporting Ramirez's assertion (Drost Supp. Decl. (dkt. #104) ¶¶ 3-4, 6-8), that declaration only raises a factual dispute that will have to be resolved by a jury. Indeed, even Ramirez's watered down deposition testimony

6

creates a conflict, since he testified to telling defendant about Blink essentially allowing him to continue to use the room because he "passed" as white.

Nor will the court dismiss this case or assess a strike when there are still factual disputes about whether plaintiff knowingly included false statements in Ramirez's supplemental affidavit. *See United States v. Dunnigan*, 507 U.S. 87, 94 (1993) (witness commits perjury if he "gives false testimony concerning a material matter with the *willful intent* to provide false testimony") (emphasis added). Ramirez testified that he had asked plaintiff about the reference to Blink's "N-word" statement, to which plaintiff responded that *he* had heard Blink say that to "somebody." (Ramirez Dep. (dkt. #105) 9.) However, plaintiff disputes this, averring that he had drafted the affidavit based on his interview notes, and Ramirez never disagreed with any statement in the affidavit. (Neal Aff. (dkt. #110) ¶¶ 13-14.)

Even if plaintiff overreached in drafting Ramirez's supplemental affidavit, however, the court cannot dismiss this case altogether because, as discussed above, at least some of Ramirez's deposition testimony was consistent with his supplemental affidavit and supports plaintiff's Equal Protection claim. Ultimately, the inconsistencies between Ramirez's affidavit and deposition testimony go to his credibility, and the court cannot assess credibility at this point. If, at the end of trial, the factfinder determines that plaintiff knowingly included false statements in Ramirez's affidavit, the court may impose an appropriate sanction at that time.

## ORDER

IT IS ORDERED that:

1) Defendant Brandon Drost's renewed motion for summary judgment and sanctions (dkt. # 101) is DENIED at this time.

2) The clerk of court is DIRECTED to set this matter for a telephonic scheduling conference before Magistrate Judge Anita Boor.

Entered this 16th day of September, 2025.

                               BY THE COURT:

                               /s/

                               _____
                               WILLIAM M. CONLEY
                               District Judge